This is Amy Ghosh. I'm appearing on behalf of Petitioner Torres-Hernandez. Your Honor, may I start? Yes, please. Okay. Do you have any questions for me or I should go ahead and start my argument? Please go ahead and tell us why you should win. Okay. Petitioner is a native and citizen of Mexico. He entered the U.S.A. and applied for cancellation of removal in 1999. And he had a merit hearing. And at the merit hearing, the judge mistook the notation welfare in one of his documents and decided the petitioner was receiving welfare. And when in reality, the notation welfare actually pertained to Wells Fargo Bank. And at that time, he had an attorney named Mr. Thomas Mix. Mix never explained to this simple mistake to the judge. His cancellation was denied. And he had various appeals. Some point, I think in 2006, he did a petition for review through another attorney named Mr. Manuel Gonzalez. And then Mr. Gonzalez moved, and Ninth Circuit appeal was dismissed. It was found to be late, and it was undeliverable, and that Mr. Gonzalez never informed Mr. Petitioner. Then eventually, Petitioner did a motion to reopen based on ineffective assistance of counsel. Let me just ask you what seems to me to be a problem. Assume that the plaintiff did allege ineffective assistance of counsel. Yes. As a reason for the failure to file timely. And assume the record shows that there was ineffective assistance of counsel. Then the question becomes whether full custody of the two daughters is an exceptional circumstance. Circumstances. And understand that we don't have the authority to review the question of what is an exceptional circumstance. Yes. Unless it's a purely legal error. Yes. All right. So where does that leave us, then? Your Honor, there are a few issues. In the meantime, the eldest daughter has become 21, and she has applied for him. And I-130 has been approved. So we tried to approach DHS to agree to a joint motion to remand the case so the case can go back to IJ and the case can be administratively closed. Now, there is another twist to this story. 2010, Mr. Torres-Hernandez actually got deported. He was picked from his work. DHS ICE came to his work, picked him up, and he has been deported back to Mexico. So Mr. Hernandez is currently in Mexico. So there are two options. Case could be remanded back to IJ for further inquiry as to the cancellation, as to the exceptional hardship to the U.S. citizen children, or case could be remanded back to IJ so we can get the agreed, make a deal with DHS so they can close the case administratively and Mr. Hernandez can go to U.S. consulate in Mexico and apply for waiver and can come back. But how could we remand this for the IJ to consider cancellation? My understanding is that we're just reviewing their decision to deny the second motion to reopen. I understand that, Your Honor. Your Honor, the second motion, the issue was ineffective assistance of counsel, and there was issue whether Lozada was followed. And it wasn't, was it? And I want to just briefly say about that. Okay. This particular case was filed in between when the Lozada was not the law. There was, in the case I forget, matter of campeon, which came in January of 2009. Mukasey, attorney general, gave, you know, made Lozada was not effective at that time. And this particular motion to reopen was filed in April of 2009. Then 3rd of June, Eric Holder again reinstated Lozada. So this particular case was filed in between when Lozada was not effective. And we feel that also it is very obvious and undisputed on the face of the record that, you know, there was ineffective assistance of counsel. I understand that he really did not comply with all the factors of Lozada. He didn't make a complaint to the State Bar. He did not write to the other counsel asking for an explanation. But he did include an affidavit stating that he was harmed. You know, he was never informed by the previous attorney. Previous attorneys never pointed out during the merit hearing that, you know, he was not claiming welfare and a few other issues. These are all the reasons you think the case should be reopened. Yes. But isn't there – that would at best get you back to Judge Kleinfeld's question, right? Say that again? It seems to me that the first barrier you've got is the problem that we're denying or reviewing a denial of a motion to reopen. Yes. And I haven't heard an error of law as to the discretionary decision that the BIA has made. Yes. So maybe I'm not understanding you, but what is the error of law that you think we should be – should require that we rule in your favor? First of all, Your Honor, what I – what I'm trying to say, that he substantially complied with Lozada requirement, and that particular time Lozada was not effective. So I think we've proved – Beyond that. Uh-huh. If there's a discretionary decision, not as to the Lozada question, but as to the If that's a discretionary decision. Yes. Which we only review if there's an error of law. Yes, I understand. What is the error of law? I think, you know, he has two U.S. citizen children who are relying on him, and he has been taking care of them. Those two children are, you know, depending on him. So I think he – he's eligible for cancellation, Your Honor. So the case should have – should be remanded back either to adjudicate the cancellation issue or, as I said, or he can get the – get his green card through adjustment of status. Well, maybe we ought to hear from the government. Yes. Then you'll have time for rebuttal. Good afternoon again, Your Honors. I think some of this goes beyond what we have before us, but is it correct that this application has been approved? That's my understanding from counsel, Your Honor. But because he was deported, there is a five-year period of time before he can be approved on 480, on adjustment of status, before he can – unless he can get a waiver. And so I'm not as hopeful as counsel that remanding it back would have any effect in that area. If we – can you just help me make sure that I understand this procedurally? I would appreciate that. I'll try my best. Okay. I will, too. Because he's been deported, if we rule in your favor today and deny relief and don't find any error on this motion to reopen, are you saying that because his daughter, who is now 21, was applied on his behalf, that that application can go ahead and go forward, but that there's going to be a five-year – basically a five-year waiting period? Isn't that where we're at? Yes. Yes, Your Honor. That's exactly right. And he was deported in 2010, so there's about a year to run. All right. I appreciate the clarification. Thank you. But I would mention just offhand that he did not comply with Lozada in any respect. There's no affidavit. There's a declaration. It's unclear in the declaration which attorney did which wrong to him at what time. You've got Tom Mix, who appealed to the board, cleared up the welfare notation, and the board issued a decision saying, you know, leaving that welfare out of here. The IJ's decision is still good. Then Mr. Gonzalez comes into the picture, and he does a motion to reopen with the board, and he files a petition for review with this Court. The declaration is so unclear as to what the scope of these people's representation was that it's impossible to discern whether or not we should be a little looser with the Lozada requirements in this case, because there's – it's not apparent on the record that there was any egregious activity by either attorney to support a ineffective assistance of counsel claim. And that was the only Lozada requirement that was even almost addressed was the affidavit one. The other three were not touched at all. Well, it sounds like in the declaration, it's not all that unclear what the lawyers didn't do. I mean, one, that he hired them to appeal to the court, and he didn't do it. And then he didn't know that there was any decision until it was too late. But if you'll notice in that declaration also, Your Honor, he doesn't start trying to call that attorney until three days before he writes it. So your argument is there wasn't a showing of diligence? There's no diligence. He didn't write until three days before what? Before writing the declaration, before he signed the declaration. He has a statement in there that he made repeated phone calls to the attorney's telephone number, but the voicemail box was full. So these counsel have never even been apprised of the fact that he's raising an ineffective assistance of counsel claim against them. And they've had no opportunity to respond as to what the scope of their representation was, what they did do, what they did not do. Well, it said that he filed his appeal to the 9th Circuit late, moved to a new location more than a year ago. But it's important to note, Judge, that he doesn't say when he retained that counsel. So we have really nothing to go on in this to show that there has been any egregious activity by either of these attorneys that would allow us to do that. Well, did the attorney move to a new location and fail to notify the court? And so the court mailed a decision to the old address, and it was returned, and then it mailed to the new address. It was too late to file a petition. It's – I don't know. I'm not sure it's determinative. But what would you say if we could find in the record that there was sufficient – it was sufficiently clear in the record that there was ineffective assistance? If it's clear on the record, then you can – you can relapse the strict compliance with Lozada requirements. But I still think that notification of counsel that they're being – that this allegation is being leveled against them and offering them an opportunity should have been. No, but if it were, if he got by Lozada, what then? Where would we be with the case? Well, if he had – if he had complied with Lozada. Based on his opening brief to this Court, he doesn't challenge any of the underlying decision. Isn't he challenging the failure to open sua sponte? He does. He does indeed. And I'm sorry, that was in my first paragraph, which I skipped over. He does indeed do – he challenged the sua sponte reopening, and it's unclear what he's actually asking for. If he's asking for this Court to order or to review the declination of reopening sua sponte by the Board, this Court has repeatedly and consistently said we don't have jurisdiction over that. What he may also be arguing, though, or may be arguing instead, is that this Court should sua sponte reopen his proceedings, which, of course, this Court cannot do because it's a court of review and not first view. So I – that's out of the ballgame. And I believe any challenge to his other claims, because the only argument he makes is this Lozada one. And he doesn't – he waives any challenge to the Board's determination as evidence is insufficient because he doesn't make the argument. He waives any challenge that the requirement should be excused because he doesn't make the argument. He doesn't challenge that failure to comply with Lozada was not an appropriate basis for reopening, and he doesn't challenge the adequacy of the Board's decision. And so for these reasons, there's nothing left of this man's case. So let's assume you were to win the case, and then what would his next step be to ask for a waiver so he can come back a year from now? Well, that wouldn't be with me or with this Court. The waivers are done administratively. I understand. I'm a criminal lawyer, so I don't have a real good grasp on immigration law. But my understanding is he will go to the embassy. He'll go to the what? He'll go to the embassy where he is. Yeah. I think it's Mexico. And he will apply for what's called a 212C waiver. And once that – is it C? 212H. 212H waiver. And once that's adjudicated, then they'll give him a visa to come back. And once he's – I'm not even sure. He may be able to adjust his status while still – no. He has to come back here and adjust his status. But that's all taken care of administratively by the Department of Homeland Security. And that's a part of this separate application process that his daughter has initiated, right? Yes. Yes, it is. Thank you. Thank you. My time is almost up. I would like to say that I don't think I'm as competitive as you may think I am, Judge. But I do – I do like you. But if you don't have any more questions for me, I'll sit down. Thank you. Thank you. I just want to clarify one thing, that if the case gets remanded back to IJ and we can close the case administratively, then it will be easier for him to get the waiver at the back. But instead, if the case is denied, he will have a final order of deportation. It will be very difficult for him to get the waiver approved. And also, it's my understanding the bar is not five years. It's 10 years bar. If you stay in the United States more than six months illegally, the bar is 10 years. So he has been deported in 2010, and it's four years. So he has to wait six more years. But it's my understanding that if the case gets remanded back to IJ, we get the case administratively closed, and he then can go to Mexican consulate and apply for waiver, and there is a possibility he can come back to the United States faster. On what basis would the IJ close the case administratively? Normally, what happens, DHS, whenever there is an I-130 approved, I have seen in numerous occasions judges tell the DHS to use a prosecutorial discretion and agree with in administrative closure. So it can be. You've seen judges direct the DHS to use their prosecution? Is that what you're saying? I mean, yes. In Los Angeles Immigration Court, we have seen whenever the I-130 is approved, normally the case gets administratively closed, and then DHS takes over on the adjustment process. Sometimes if the adjustment does not get approved, these cases are closed administratively. It means it's not gone. It can again reopen back. You're speaking of cases where the government agrees to that. Exactly. Thank you. Yes. That's all, Your Honor. Thank you. Thank you, counsel. Case 2-3 will be submitted. The court will stand at recess to debate.
judges: Sedwick, REINHARDT, CHRISTEN